O

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY L. SALMAS,<br><br>    Plaintiff,<br><br>vs.<br><br>MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING, LLC, and ENCORE CAPITAL MANAGEMENT, INC.,<br><br>    Defendants. | Case No.: SACV 13-679-DOC (SHx)<br><br>**ORDER GRANTING SUMMARY JUDGMENT [26]** |

Before the Court is Defendant Midland Funding LLC's Motion for Summary Judgment ("Motion" or "Mot.") (Dkt. 26) as to all claims contained in pro se plaintiff Timothy L. Salmas' ("Mr. Salmas'") First Amended Complaint ("FAC") (Dkt. 20). Having considered the Motion, Opposition, and Reply, and all exhibits attached thereto, the Court hereby GRANTS the Motion.

## I. BACKGROUND

### A. Communication Between Midland and Mr. Salmas[1]

Midland Funding, LLC ("Midland Funding") is a wholly-owned subsidiary of Midland Credit Management, Inc. ("Midland"). Decl. of John Moreno ("Moreno Decl.") ¶ 3.

On October 19, 2011, Midland Funding purchased T-Mobile's "rights, title, and interests in" Mr. Salmas' cellular phone account. Moreno Decl. ¶¶ 8-10, Ex. A. Mr. Salmas' T-Mobile account contained a total of $932.89 unpaid debt. Moreno Decl., ¶ 10, Ex. B.

Midland attempted to collect the debt by sending a letter to Mr. Salmas, explaining the following:

> Midland Funding [] recently purchased your [Mr. Salmas'] T-MOBILE account and Midland [], a debt collection company, is the servicer of this obligation. As the new servicer of this account, we would like to find a positive resolution to your account . . . . The records associated with the account purchased from T-MOBILE reflect that you are obligated on this account, which is in default. As of the date of this letter, you owe $932.89 . . . . As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit-reporting agency if you fail to fulfill the terms of your credit obligations.

Moreno Decl., Ex. C. Midland then offered to collect the discounted amount of $839.60, in order to satisfy the total obligation. *Id.* Mr. Salmas asserts that he never received this letter. Decl. of Timothy L. Salmas ("Salmas Decl.") ¶ 4.

Midland began reporting the account to Experian, TransUnion, and Equifax (together, "Credit Reporting Agencies" or "CRAs") on December 19, 2011. Moreno Decl., Ex. D.

---

[1] At the outset, the Court notes that Timothy Salmas and Paul Salmas both have several suits pending, dismissed, or otherwise resolved in federal court. Paul Salmas appears to have been present during the deposition of Timothy Salmas on January 28, 2014. *See* Decl. of Keith Yeomans, Ex. A. The pleadings in each of the cases are nearly identical. Timothy Salmas is the plaintiff in the following cases: *Timothy L. Salmas v. Velocity Portfolio Group Inc.*, No. 13-cv-678-JVS-JCG; *Timothy L. Salmas v. Midland Funding* LLC, No. 13-cv-679-DOC-SH. Paul Salmas is the plaintiff in the following cases: *Paul M. Salmas v. Portfolio Recovery Associates LLC*, No. 13-cv-575-DOC-JPR; *Paul M. Salmas v. NCO Financial Systems Inc.*, No. 13-cv-577-AG-RNB; *Paul M. Salmas v. Convergent Outsourcing, Inc.*, No. 13-cv-744-CJC-RNB; *Paul M. Salmas v. Convergent Outsourcing, Inc.*, No. 13-cv-1304-GW-JCG. The existence of these other cases has no bearing on the disposition of the matter before this Court. Nevertheless, the Court is concerned that Timothy and Paul Salmas are using the federal courts to extract settlements from entities attempting to collect duly owed debt.

On April 5, 2013, Mr. Salmas sent Midland Funding a letter entitled, "RE: NOTICE OF INTENT TO SUE." Moreno Decl., Ex. E. In the letter, Mr. Salmas asserted that Midland obtained his credit report without a permissible purpose, and he demanded a reasonable settlement. *Id.*

Midland then reported Mr. Salmas' account as "disputed." Moreno Decl. ¶ 18. On April 30, 2013, Midland sent a written response to Mr. Salmas with account information for the T-Mobile account. Moreno Decl., Ex. F. It listed "T-Mobile" as the "Original Creditor" and listed the original account number. *Id.* Furthermore, it explained:

> The purpose of this letter is to advise you of the results of our investigation of the dispute of the credit reporting of your above-referenced account pursuant to the Fair Credit Reporting Act. Please be advised that we have determined that our credit reporting of the above-referenced account is accurate or we have updated it with the three major credit bureaus to make it accurate . . . . Further, we will continue to request that the three major credit bureaus list the status of this account as "Disputed."

*Id.* The letter then enclosed a T-Mobile document that included Mr. Salmas' name, address, phone number, last four digits of his social security number, and the balance due on the T-Mobile account. *Id.*

On May 4, 2013, Mr. Salmas sent a letter to Midland, explaining that "[he] dispute[d] the alleged debt in its entirety." Moreno Decl., Ex. G. Furthermore, he asserted that "the information you furnished does not constitute legal and proper validation of the alleged debt." *Id.*

### B. Procedural History

On April 30, 2013—before Midland even had a chance to formally respond to his notice of dispute—Mr. Salmas filed the Complaint in this action, asserting claims for violation of the 15 U.S.C. § 1681, 15 U.S.C. § 1692, and 15 U.S.C. § 1788.30. *See generally* Compl.

Parties were ordered to attend a scheduling conference on August 12, 2013. Order, June 5, 2013 (Dkt. 6). Mr. Salmas failed to attend, and the Court dismissed the case without

prejudice.  Minutes, August 12, 2013 (Dkt. 9).  Mr. Salmas was given one month to file an objection to the dismissal.  *Id.*  He timely filed an objection, explaining that he "made a mistake in that he had misinterpreted the documents sent from the court" and "was out of the country on a personal matter."  Objection, August 26, 2013 (Dkt. 10).  The Court set aside its dismissal and reopened the case.  Minute Order, August 28, 2013 (Dkt. 11).

On October 24, 2013, Mr. Salmas filed a Notice with this Court that he had some difficulty meeting and conferring with opposing counsel.  Notice, October 24, 2013 (Dkt. 18).  The Court granted leave for Mr. Salmas to amend his complaint, and he filed a First Amended Complaint on November 12, 2013.  *See generally* FAC.

On December 13, 2013, counsel for Midland Funding served requests for admission, interrogatories, requests for production of documents, and noticed Mr. Salmas' deposition for January 10, 2014.  Decl. of Keith Yeomans ("Yeomans Decl.") ¶ 3.  The day before the deposition, Mr. Salmas sent an email to counsel for Midland, explaining that he had "not received any discovery or notice of deposition" and would not be able to attend the deposition.  *Id.* ¶ 4.  Midland responded to the email with electronic copies of the outstanding discovery requests.  Yeomans Decl., Ex. B.  On January 10, 2014, Mr. Salmas confirmed receipt of Midland's email.  Yeomans Decl., Ex. C.[2]

On January 28, 2014, Midland's counsel deposed Mr. Salmas.  Yeomans Decl. ¶ 2.  As of February 24, 2014, Mr. Salmas has not served any responses or objections to the outstanding discovery.  Yeomans Decl. ¶ 7.

**II.    LEGAL STANDARD**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury.  *Celotex Corp. v. Catrett*, 477

---

[2] Mr. Salmas declared, under penalty of perjury, that he had "never received or been served with discovery pertaining to this lawsuit."  Salmas Decl. ¶ 10.  This is clearly contradicted by the exhibit provided by Midland's counsel.  *See* Yeomans Decl., Ex. C (Mr. Salmas confirming receipt of discovery request).  The Court attributes this to inadvertance.  Mr. Salmas should consider himself on notice that any further misrepresentations to the Court will result in serious sanctions.

U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is required only to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

**III.   ANALYSIS**

**A. Deemed Admissions**

Midland argues that Mr. Salmas' failure to respond to requests for admissions is fatal to all of his claims. The Court disagrees.

"A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the

matter and signed by the party." Fed. R. Civ. P. 36(a)(3).  A matter admitted under Rule 36 is "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b); *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1111-12 (9th Cir. 2006); *999 v. C.I.T. Corp.*, 776 F.2d 866, 869-70 (9th Cir. 1985).  The rule is self-executing, and the Court cannot ignore the admissions in considering the parties' motions for summary judgment unless it first grants a motion to waive or amend.  *Am. Gen. Life & Accident Ins. Co. v. Findley*, No. CV 12-1753, 2013 U.S. Dist. LEXIS 41644, at *6 (C.D. Cal. March 15, 2013) (deeming a pro se litigant's failure to respond as an admission).

Once a matter has been deemed admitted under Rule 36, even by default, the court may not consider evidence that is inconsistent with the admission.  *See 999*, 776 F.2d at 869-70; *Cook v. Allstate Ins. Co.*, 337 F. Supp. 2d 1206, 1210 (C.D. Cal. 2004).  A summary judgment motion can be based upon deemed admissions.  *See O'Campo v. Hardisty*, 262 F.2d 621, 623-24 (9th Cir. 1958).

The Court is troubled by Mr. Salmas' prosecution of this action.  He has missed several deadlines and it appears that he is approaching this federal lawsuit with a casual attitude.  Indeed, Mr. Salmas' unresponsiveness has prejudiced Midland by, for example, forcing it to file its motion for summary judgment without the benefit of discovery.  As of February 24, 2014, Mr. Salmas has not responded to the requests for admission.  Therefore, the Court will deem the following requests for admission as admitted: 11, 15, 16, 17, 18, 19, and 23.

However, the rest are inappropriate as requests for admission.  The requesting party bears the burden of setting forth requests simply and directly, and should not request admissions of "facts which are obviously in dispute" or "demand that the other party admit the truth of a legal conclusion[.]"  *Jones v. McGuire*, No. 08-CV-2607, 2012 U.S. Dist. LEXIS 87040, at *19 (E.D. Cal. June 22, 2012).  The remaining requests for admission take the form of: "admit that your claim is meritless."  Those are not valid requests for admission and the Court will not deem them admitted.

### B. Obtaining a Credit Report Without a Permissible Purpose (15 U.S.C. § 1681b and California Civil Code section 1785.11(a))

Both the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681b, and the California Credit Reporting Agencies Act (CCRAA), California Civil Code section 1785.11, prohibits entities from obtaining consumers' credit reports except for specific enumerated purposes. Under both statutes, one permissible purpose is if the entity "*intends to use the information in connection with* a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or *collection of an account* of, the consumer." 15 U.S.C. § 1681b(a)(3)(A) (emphasis added); Cal. Civ. Code § 1785.11(a)(3)(A) (same). In other words, debt collectors are permitted to access a debtor's credit information to aid in collecting the debt.

Midland is a debt collection agency and has offered evidence that it purchased Mr. Salmas' debt on October 19, 2011. Moreno Decl., Ex. A. Furthermore, it has offered evidence that the debt that it purchased bears the name of "Timothy Salmas," Mr. Salmas' address, and the last four digits of Mr. Salmas' social security number. Moreno Decl., Ex. B; Yeoman Decl., Ex. A. Therefore, Midland obtained Mr. Salmas' credit report for a permissible purpose, i.e., collecting a debt. *See* 15 U.S.C. § 1681b(a)(3)(A); Cal. Civ. Code § 1785.11(a)(3)(A).

Accordingly, the Court GRANTS summary judgment in favor of Midland, to the extent that Mr. Salmas' complaint is predicated on allegations that Midland obtained a credit report without a permissible purpose.

### C. Failure to Reinvestigate (15 U.S.C. § 1681s-2(b) and California Civil Code section 1785.2(a))

Section 1681s-2(b) imposes a category of duties on furnishers of information. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (2009). When a furnisher receives a "notice of dispute," it must:

(A) *conduct an investigation with respect to the disputed information*;
(B) review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) . . . ;
(C) report the results of the investigation to the [CRA];

  (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information . . .; and

  (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) . . . (i) modify . . . (ii) delete [or] (iii) permanently block the reporting of that item of information [to the CRAs].

15 U.S.C. § 1681s-2(b)(1) (emphasis added). In *Dennis v. BEH-I, LLC*, 520 F.3d 1066 (9th Cir. 2008), the Ninth Circuit held that a plaintiff filing a suit under 15 U.S.C. § 1681i must make a "prima facie showing of inaccurate reporting." *Id.* at 1069. This requirement also applies to suits under 15 U.S.C. § 1681s-2(b). *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2008) ("We generally adhere to the maxim of statutory construction that similar terms appearing in different sections of a statute should receive the same interpretation"); *see also Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 37 (1st Cir. 2010) (deeming the term "inaccurate" in section 1681i(a) to be "essentially the same" as the term "incomplete or inaccurate" in section 1681s-2(b)). In order to make such a prima facie showing, plaintiff must demonstrate that an item on a credit report is "patently incorrect or misleading." *Gorman*, 584 F.3d at 1163.

  Once the plaintiff has made a prima facie showing that the item is patently incorrect or misleading, "[t]he pertinent question is . . . whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description of the [notice]." *See Gorman*, 584 F.3d at 1157 (discussing the standard for when a CRA provides a notice of dispute).

  Mr. Salmas fails to make a prima facie showing that the debt reported by Midland was "patently incorrect or misleading." Indeed, notwithstanding Mr. Salmas' conclusory allegations, all the evidence suggests that the reported debt is correct. Midland owns the rights to a T-Mobile account bearing Mr. Salmas' name. *See* Moreno Decl., Ex. B. In his deposition, Mr. Salmas admitted that the four digits contained in the account information corresponded to the last four digits of his social security number. Yeomans Decl., Ex. A. He also admitted that the address listed in the account information was his address. *Id.* Finally, by failing to respond

-8-

to requests for admissions, he has admitted that all the identifying information on the account, including the phone number and billing address, belongs to him. *See* Section III.A. Mr. Salmas has offered no evidence to make a "prima facie showing of inaccurate reporting." *See Dennis*, 520 F.3d at 1069.

Likewise, Mr. Salmas' claim for failure to reinvestigate under the CCRAA fails. "In determining whether an item of credit is inaccurate, the same test is applied under the FCRA and the CCRAA." *Meija v. Bank of Am.*, No. C13-01157-HRL, 2014 U.S. Dist. LEXIS 19926, at *6-8 (Feb. 14, 2014) (citing *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890-91 (9th Cir. 2010)).

Furthermore, even if Mr. Salmas had made a prima facie showing that the reporting was inaccurate, he has not shown that Midland's procedures were unreasonable "in light of what [Midland] learned about the nature of the dispute from the description of the [notice]." *See Gorman*, 584 F.3d at 1157. Mr. Salmas has not provided the Court with the notice of dispute that the credit reporting agencies provided to Midland. Even assuming that Mr. Salmas' own notice of dispute sent to Midland was sufficient to trigger Midland's duty to reinvestigate, Mr. Salmas provided only a bare assertion that he was "disputing the following reported items . . . . Midland Funding, LLC 854273*." Salmas Decl., Exs. D-F.[3] In response, at the very least, Midland investigated the basis of Mr. Salmas' debt and enclosed account information from his unpaid T-Mobile debt. *See* Moreno Decl., Ex. F. Given that Mr. Salmas provided no information as to the grounds of his dispute, Midland was not obligated to conduct a meticulous investigation. *See Gorman*, 584 F.3d at 1157. The verification of the T-Mobile debt was sufficient, in light of Mr. Salmas' bare assertion. *See id.* Therefore, the Court finds that Mr. Salmas has failed to present any genuine issue of material fact as to Midland's failure to reinvestigate. *See Musick*, 913 F.2d at 1394.

---

[3] The exhibits offered by Mr. Salmas are heavily redacted. But, the Court assumes that because Mr. Salmas submitted them, they contain all the information necessary for this Court to reach a decision.

Accordingly, the Court GRANTS summary judgment in favor of Midland, to the extent that Mr. Salmas' complaint is predicated on allegations that Midland failed to reinvestigate the basis of Mr. Salmas' disputed debt.

### D.  Failure to Provide Notice (15 U.S.C. § 1692(g))

The Fair Debt Collection Practices Act (FDCPA) applies only to the collection of debt that "aris[es] out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).  "A threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt'" as defined by the FDCPA. *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163m 1167 (3d Cir. 1987).

Mr. Salmas has offered no evidence that suggests that the FDCPA applies to this action.  As explained above, the evidence shows that Midland was attempting to collect on a debt owed by Mr. Salmas in relation to a T-Mobile account.  However, Mr. Salmas testified that he had no recollection as to whether the account was truly his.  Yeomans Decl., Ex. A.  In other words, there is no way for this Court to determine whether this debt was used for "personal, family, or household purposes"—instead of, for example, business purposes.  *See* 15 U.S.C. § 1692a(5).  Therefore, Mr. Salmas fails to make a threshold showing that he can assert a claim under the FDCPA.

Accordingly, the Court GRANTS summary judgment in favor of Midland, to the extent that Mr. Salmas' complaint is predicated on the Fair Debt Collection Practices Act.

### E.  Claims Against Encore Capital Management

In addition to Midland and Midland Funding, Mr. Salmas asserts claims against Encore Capital Management, Inc. ("Encore").  The gravamen of his claims against Encore is that Encore owns Midland and Midland Funding and is, therefore, concurrently liable for any actions taken by either Midland or Midland Funding.  Mr. Salmas alleges no additional facts relating to Encore.  Given that the premises for Mr. Salmas' claims against Encore—the claims

1 against Midland and Midland Funding—fail as a matter of law, so too do the claims against Encore.

Accordingly, the Court GRANTS summary judgment in favor of Encore as to all claims.

## IV. DISPOSITION

For the reasons explained above, the Court hereby GRANTS Midland's Motion for Summary Judgment in its entirety. Furthermore, the Court ORDERS Midland to file a proposed final judgment conforming to the rulings made in this order on or before March 14, 2014.

DATED: March 3, 2014

*David O. Carter*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE